## LARKIN D. SNOW, in Equity,

*vs.*

## GEORGE F. RUSSELL, and others.

Cumberland.    Opinion December 15, 1899.

*Probate. Jurisdiction. Bond. Sales. Equity. R S., c. 64, § 8; c. 71, § 4.*

The provisions of R. S., c. 64, § 8, that "sales of real estate may be made under the provisions of a will, without the executor giving bond, when the will so provides" are not applicable in a case where the testatrix in her will requested that "no official bond be required to be filed" by the executor "in his said capacity," but where the will itself makes no provision for the sale of real estate.

*Held;* that a decree of a judge of probate licensing the sale of real estate in such case by an executor for the purpose of paying debts, and excusing the executor from giving bond, before making the sale, is void; and the sale under such license, no bond in fact having been given, is equally void; and the validity of the decree and the sale may be attacked collaterally, though no appeal was taken from the decree.

*Also;* that the complainant has a complete and adequate remedy at law; and that the complainant not being in possession of the land, a bill in equity cannot be maintained as a proceeding to remove a cloud from his title.

The complainant charged in his bill that the license was issued to pay a collusive and fraudulent judgment obtained by one of the defendants, who was the purchaser of the land under the license. *Held;* that if the defendant seeks further to collect his judgment, that this and the other questions involved can, and properly should, be determined by the probate court, either upon a new petition for license to sell, if any is made, or upon a settlement of the executor's account.

IN EQUITY. ON APPEAL BY COMPLAINANT.

This was a bill in equity praying that a judgment in favor of the defendant Russell be annulled; and that a sale made by him under a license granted by the probate court be decreed invalid; and that the defendant Russell and Reuben and Henry B. Higgins, the other defendants, named in the bill, be decreed to release all their interest in the premises and to cancel a mortgage held by them thereon.

The cause came up for hearing by the justice, in the first instance, on bill, answer, demurrer and proofs, who dismissed the bill, and made the following finding of facts and decisions:—

Submit C. Russell, wife of John H. Russell, died February 7th, 1896, testate. Her will was admitted to probate on the third Tuesday of March, 1896. At her death she was seized of the real estate described in the bill, which was appraised at $2,250, and personal estate to the amount of $314.56. She nominated her husband, John H. Russell, executor, who was duly appointed and received letters testamentary. In her will she requested, " that no official bond in his said capacity be required to be filed in the probate court by him." The will gave all her property to her husband for life, and then provided that, " at the decease of my said husband, I give and bequeath to my son Lemuel T. Davis—and to my granddaughter Sarah F. Coyle—and to my husband's son George F. Russell—such sums as my husband may think just and right. At the decease of my said husband I give and bequeath to my son William W. Davis ten dollars."

March 24th, 1896, under this power and in execution of the same, John H. Russell made an appointment under seal to Lemuel T. Davis four hundred dollars, to Sarah F. Coyle one thousand dollars, and to George F. Russell sixteen hundred dollars, which was to include all sums owing to George by Mrs. Russell.

The descendants of Mrs. Russell living at her decease were her two sons Lemuel T. Davis and William W. Davis, her grandson Charles D. Merrill, her granddaughter Sarah F. Coyle, daughter of William W., and two great grandchildren Henry Merrill and Frances Merrill. John H. Russell had a son George F. Russell by a former marriage. This son was in feeble health, and has always been unable to do hard or persistent work, but for most of the time was able to do chores and light work for and about the house. He came of age in 1881.

For several years before that he had lived with and been boarded and clothed by Mrs. Russell. While a minor he had received from Tewksbury one thousand dollars, which was in a savings bank, subject to the control of his father, who was his guardian. The in-

terest received from the bank appears to have been paid to Mrs. Russell, by her husband, to compensate for care and support of George, until he became twenty-one years of age in 1881, and prior to September 15th.  Mrs. Russell then requested George to lend her this money to discharge an incumbrance upon her real estate.  On September 15th, 1881, George drew his one thousand dollars from the bank and let Mrs. Russell have it, taking her note for the amount at that date, payable in five years with interest at six per cent payable semi-annually.  It was then agreed between them that while George remained with her she should board and clothe him, and that this should be given and received as payment of the accruing interest upon the note.  A fair price for this support would exceed the interest and the value of services rendered by George, and the small amount he paid her when he had employment; but I find that Mrs. Russell made no charge to or claim of George for any excess, but was satisfied to offset the support against the interest and the light services that George might render, and his occasional small payments, and did not claim or intend to claim any additional payment.  For a small portion of the time George earned three dollars a week in some outside service, and during that time he paid her two dollars a week toward his support. George remained with and was supported by Mrs. Russell from his majority, in 1881, to the death of Mrs. Russell in February, 1896.

Under the arrangement between the parties, I find that the interest upon the note had been fully paid by Mrs. Russell, in board and clothing, up to her death, and that the principal sum of one thousand dollars was then due and owing George from Mrs. Russell.

Suit was brought upon this note by George, on October 8th, 1897, returnable to the November term of the superior court, which was defaulted, judgment rendered and execution issued for $1,350.50.  No indorsements had been made upon the note until a short time before suit was brought, when George indorsed payments of interest in full up to May 15th, 1891, and made an indorsement of $14.00 as of September, 1893, and $18.00 July,

1894, and $11.00 August, 1895.    He should have indorsed full payments of interest to date of death of Mrs. Russell, in February, 1896, as interest had been paid to that date, in manner before stated.

On or about February 18th, 1896, Lemuel T. Davis and Charles D. Merrill made an agreement with John H. Russell, in writing, which is to be referred to as a part of my finding, by which Davis and Merrill were to release their interest in Mrs. Russell's estate and make no opposition to probate of her will, and were to receive from John H. Russell $1,500,00.

March 11th, 1896, in execution of this agreement, Davis and Merrill delivered to Russell a quitclaim deed of all interest in the estate, and received from Russell his note for $1,500.00, payable in three years, and his mortgage upon the real estate of Mrs. Russell to secure the same, with one year foreclosure clause.    Russell had obtained a quitclaim from William W. Davis of his interest, on February 11th, 1896.

This note and mortgage Davis and Merrill sold to John F. Proctor on March 13, 1896.    They indorsed the note in blank, and executed and delivered to Proctor on that day an assignment of the mortgage, leaving blank the name of the assignee.    Proctor paid Davis and Merrill for the note and mortgage, $1000.00 cash, and was to allow to Mrs. Merrill for a period of time, free rent in his tenement then occupied by her.

Proctor sold the note and mortgage to complainant on or about March 13th, 1896, and filled in complainant's name as assignee in the assignment made by Davis and Merrill, and delivered it to Snow.    Snow paid $1,500.00 for the note and mortgage, and had no knowledge of any defense nor of any defect in the title.    He was a purchaser for value and in good faith.    Interest not being paid, he foreclosed the mortgage, by publication, the first publication being July 14th, 1897.    The notice was duly recorded. These proceedings were in due form of law.

On the fifth day of March, 1898, John H. Russell petitioned the probate court for license to sell Mrs. Russell's real estate, described in the bill, for payment of debts, on which legal notice

was given, and on April 13th, 1898, that court decreed that he have license to sell at public or private sale, without giving bond. No appeal from this decree was taken. License in due form issued on April 13th, 1898.

Under this license John H. Russell sold the real estate in controversy, by private sale, to George F. Russell for $2,200.00, the third day of May, 1898, and on the same day executed and delivered to George F. Russell a deed of the same, which was recorded in Cumberland registry on May 4th, 1898. No .objection is made to the regularity of the proceedings, after the license was granted.

George obtained from Reuben and Henry B. Higgins three hundred dollars on mortgage of the property, executed May 3d, 1898, which together with his execution were applied towards payment of purchase price.

John H. Russell died in 1898. On February 14th, 1896, he was sick in bed with a bronchial cold and feverish, but improved the next day and was out attending to business on February 18th. The doctor found him with pneumonia on the 20th, and delirious. He was confined to his bed till March 2nd or 3rd, and was not downstairs till the 6th or 7th of March. His physician left him March 7th. For some days before that, his physician testified that his mind was clear, but he was physically weak.

Russell was present at the office of Mr. T. L. Talbot on February 18th, 1896, when the agreement with Davis and Merrill was executed there by all the parties. He then appeared to be in possession of his mental faculties and capable of doing business. On March 9th, his mind was clear, though physically weak. On March 12th, 1896, when the mortgage from Russell to Davis and Merrill, bearing date March 11th, was in fact executed, Russell was in his house, weak in body, but talked intelligently about the business.

The evidence now introduced fails to satisfy me that, either on February 18th or March 12th, Russell was incapable of transacting business understandingly.

Complainant claims that the note to George F. Russell is paid and barred by limitation; that the judgment thereon was collusive;

that John H. Russell should have defended, and was guilty of fraud in not doing so; that the sale under license from the probate court was void because no bond was given; that the mortgage Russell to Davis and Merrill was upon a valuable consideration and operated to convey title to all the real estate which Russell had acquired under the will of his wife, and deeds of release from Lemuel T. Davis and William W. Davis, sons, and Charles D. Merrill, a grandson, of Mrs. Russell. He prays by his bill that the judgment in favor of George F. Russell be annulled; the sale under license decreed invalid; and that George and Reuben and Henry B. Higgins be decreed to release to complainant all their interest in the premises, and to cancel the Higgins mortgage.

The defendants claim that on February 18th, 1896, when the agreement with Davis and Merrill was executed by John H. Russell and on March 12th, 1896, when the note and mortgage were given by Russell, that he was of unsound mind and incapable of doing business, and that the agreement and note and mortgage are, for that reason, void; that the judgment on the thousand dollar note, and the sale under license are valid and defeat complainant's mortgage.

Upon the facts which I have hereinbefore found, I decide as a matter of law, that the agreement of February 18th, 1896, between John H. Russell and Lemuel T. Davis and Charles D. Merrill and the note and mortgage of March 11th, 1896, Russell to them, were valid against John H. Russell:

That Charles D. Merrill, grandson and an heir-at-law not being named in Mrs. Russell's will, and there being no evidence that he was intentionally omitted from the will, was entitled by virtue of the statute, to inherit as if Mrs. Russell had died intestate:

That the two great grandchildren were not entitled to inherit. R. S., c. 75, § 1; *Stetson* v. *Eastman*, 84 Maine, 376:

That Submit C. Russell was indebted to George F. Russell, upon her note to him, in the sum of one thousand dollars and interest from the date of her death :

That the note was not barred by the statute of limitation :

That George F. Russell was entitled to receive the same from

the estate of Mrs. Russell, and that it was the duty of her executor to pay it:

That the personal being insufficient, it was his duty to obtain license and sell the real estate for this purpose :

Suit upon the note was unimportant. The legal duty of the executor was the same, whether suit had been brought or not. George's claim was superior to that of heirs or legatees. As he knew the legal rights of George, it was not his duty to set up a groundless defense to that suit:

That the interest of the heirs in the real estate was subject and subordinate to the rights of creditors of Mrs. Russell:

That to pay the debts and expenses of administration, it was necessary to sell the real estate :

That the probate court, in granting license to the executor after public notice to sell the real estate, adjudged that under the provisions of the will, no bond was required, and granted the license without bond. No appeal from this decree was taken. The matter was within the jurisdiction of that court, and the decree must be upheld. If vacated, it would not avail plaintiff, as the estate would remain liable to be sold under a new license, or subjected to levy for the debt due George.

It follows that the estate was legally sold to George F. Russell, and the absolute title passed to him, and nothing is left to which plaintiff's mortgage can attach.

Bill dismissed with one bill of costs.

*W. R. Anthoine and T. L. Talbot,* for plaintiff.

The first objection made to the title of the complainant arises from a clause in the will of Submit C. Russell, and an attempted appointment under the will. Had Submit C. Russell died intestate, leaving no debts in excess of the personal property, the mortgage to Merrill and Davis would have given title to the real estate to the complainant, Snow.

Had the will provided that all the estate, real and personal, of the testatrix should go to Davis, Coyle and Russell as her husband might think just and right, a valid power coupled with a trust would have been created in favor of those three individuals. The

will in the case at bar is absolutely indefinite upon this important point. The requirements of the will would have been met had John H. Russell appointed $10 to each of the beneficiaries, and they would have been powerless to prevent the remainder of the estate from passing to the heirs as undevised property. No intention to dispose of her entire estate, or of the real estate is disclosed. The real estate, therefore, descends to heirs. No trust relation can exist between the parties, for no property is made the subject of a trust.

John H. Russell under the so-called deed of appointment, has not even attempted to make a disposition of the real estate. It cannot be claimed that any title to the real estate passed to the three appointees. Something further must have been done to give them a legal interest which they in turn could have conveyed to other persons. The statutes of this state do not allow courts of probate to issue licenses to sell real estate for the purpose of providing funds to pay sums of money appointed under a power like that in the case at bar. Even if such a license could be granted, it never has in fact been granted, and until it is the real estate in question must belong to the complainant under his foreclosed mortgage.

But if it be admitted that the will gave John H. Russell power to appoint the real estate, it is maintained that the agreement of February 18, 1896, was a valid exercise of that power in favor of Lemuel T. Davis. By the quitclaim deeds of Lemuel T. Davis and Charles D. Merrill and William H. Davis, John H. Russell became the absolute owner of the real estate subject only to what, for the purposes of this argument, may be admitted to be a power of appointment in favor of Davis, Coyle and George F. Russell. The purposes of this agreement were, first: to prevent objection to the probate of the will; second: to effect a settlement with Charles D. Merrill, who had been omitted in the will and who, therefore, took as heir of Submit C. Russell; third: to execute the power in favor of Lemuel T. Davis one of the beneficiaries named in the will. By an instrument, sufficient in law to pass the title to real estate, John H. Russell conveyed the India street property

to Davis and Merrill, who subsequently conveyed to the complainant, Snow. The power admitted to be given by the will was not valid because of the entire indefiniteness of the subject matter; that no trust was created that could be carried into effect; that if a power was given, it was a naked power not coupled with a trust, and that if the power was defectively executed by the deed of appointment in favor of Davis, Coyle and George F. Russell, such defective execution cannot now be aided.

Counsel cited: *Richardson* v. *Chapman*, 7 Bro. P. C. 318; *Brown* v. *Higgs*, 8 Vesey, Jr. 574; *Greenough* v. *Welles*, 10 Cush. 571; *Burrough* v. *Philcox*, 5 Mylne & Craig, 92; *Wentworth* v. *Shibles*, 89 Maine, 167; Perry on Trusts, §§ 82, 83, and cases cited.

The failure to file the bond required by law made this conveyance void, and nothing passed to George F. Russell under the deed. R. S., c. 71, § 4; *Lebroke* v. *Damon*, 89 Maine, 113, and cases cited.

It was the duty of the executor in the interest of the estate to defend an action brought on George's note. He should have required plaintiff to prove his case by proper evidence; he should have seen that all proper credits were given on the note to reduce the damages as low as possible, and he should not have sold at private sale to the party who had been enabled to recover a judgment, property worth $2200 for $1650. All the facts of this case show that the executor was eager to benefit his son at the expense of all other parties in interest.

A judgment may be collaterally impeached when it has been obtained by fraud or collusion. *Pierce* v. *Jackson*, 6 Mass. 242; *Caswell* v. *Caswell*, 28 Maine, 232; *Granger* v. *Clark*, 22 Maine, 128; *Sidensparker* v. *Sidensparker*, 52 Maine, 481.

A judgment may be collaterally impeached when erroneously or unlawfully rendered to the prejudice of the rights of the third parties. *Pierce* v. *Strickland*, 26 Maine, 277; *Miller* v. *Miller*, 23 Maine, 22; *Wadleigh* v. *Jordan*, 74 Maine, 483.

*M. P. Frank* and *P. J. Larrabee*, for defendants.

Complainant's alleged title is by a foreclosed mortgage given by

John H. Russell, who had only a life interest in estate of Submit C. Russell, and who deceased before the bringing of this bill of complaint. He had no other interest at the time of giving said mortgage, unless by quitclaim deeds from Wm. W. Davis and Lemuel T. Davis and Charles D. Merrill, heirs of Submit C. Russell, and who at that time had acquired no beneficial interest under said will.

The findings of facts in equity proceedings are entitled to the same weight as the verdict of a jury, and are not to be set aside or reversed upon appeal unless clearly erroneous or manifestly against the weight of evidence. *Dwinel* v. *Perley*, 38 Maine, 509; *Young* v. *Witham*, 75 Maine, 536; *Paul* v. *Frye*, 80 Maine, 26.

The decision of the judge of probate, if not appealed from, is conclusive upon all matters brought before him provided he has jurisdiction and no element of fraud or mistake enters into the matter. *Pierce* v. *Prescott*, 128 Mass. p. 140–3–5; *McLean* v. *Weeks*, 65 Maine, p. 411–421; *Patten* v. *Tallman*, 27 Maine, p. 17; *Wolcott* v. *Wolcott*, 140 Mass. p. 194; *Waters* v. *Stickney*, 12 Allen, p. 1–3–10–11; *Peters* v. *Peters*, 8 Cush. p. 529–541; *Smith* v. *Rice*, 11 Mass. p. 510–513; *Decker* v. *Decker*, 74 Maine, p. 465–7.

There being no element of fraud or mistake, the judge of probate, having jurisdiction, decided that under the provisions of the will no bond was required, and issued license to sell, and no appeal was taken therefrom. In accordance with the foregoing authorities his decision was conclusive and cannot be revised.

Where a bond was required, and license was issued without bond, and sale made, the court held that sale was valid. *Perkins* v. *Fairfield*, 11 Mass. p. 227–228; *Leverett* v. *Harris*, 7 Mass. p. 292.

See as to decree of judge of probate as to necessity of sale. *Allen* v. *Trustees, etc.*, 102 Mass. p. 262–65.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL, SAVAGE, FOGLER, JJ.

SAVAGE, J. Appeal from decree of presiding justice dismissing the bill of complainant. The complainant claims title to certain real estate described by mesne conveyances from the heirs of

Submit C. Russell. The defendant George F. Russell claims title to the same premises by a conveyance from the executor of the last will and testament of Submit C. Russell. He alleges that the sale to him was made under license from the probate court, after due proceedings had, and was made for the purpose of raising money to pay the debts of the estate of Submit C. Russell. The complainant replies that one of the debts named in the petition for license to sell was a fraudulent and collusive judgment obtained by George F. Russell against his father John H. Russell, as executor, and that the personal estate of Submit C. Russell was sufficient to pay all the valid indebtedness of the estate, together with the expenses of administration. He also alleges that the conveyance from the executor to George F. Russell was without consideration except for the fraudulent and collusive judgment set forth, and that the conveyance was made in execution of a scheme to defraud him, to create a cloud upon the title of his real estate, and deprive him of his right to the same. The complainant replies further that the license under which the sale to George F. Russell was made was void, and that the sale and deed and all proceedings thereunder were void, for the reason that the executor, before making the sale, gave no bond to the judge of probate under the provisions of R. S., chap. 71, § 4.

The answer of the defendants to these contentions of the complainant is that the judgment complained of was neither fraudulent nor collusive, but was in every respect valid ; and that he was excused from giving bond upon obtaining the license to sell real estate, by a valid decree of the judge of probate, under one of the provisions of the will of Submit C. Russell, which was, after nominating her husband, John H. Russell, as executor, " that no official bond in his said capacity be required to be filed in the probate court by him," and further, inasmuch as no appeal was taken, that the decree of the probate court, excusing the executor from filing bond, is conclusive in this proceeding.

The defendants, other than George F. Russell, are mortgagees, holding a mortgage from George F. Russell, given after he obtained the deed from the executor.

The complainant prays that the alleged fraudulent judgment may be annulled, that the cloud upon his title be removed by cancelling the executor's deed to George F. Russell, and the mortgage deed of George F. Russell to the other defendants,

The presiding justice found, and we assume it to be true, that Submit C. Russell died February 7, 1896, testate; that her will was admitted to probate on the third Tuesday of March, 1896, and her husband, John H. Russell, was appointed executor, and was not required to give bond as such; and that in the meantime, certain of the heirs and devisees of Submit C. Russell had conveyed their interests in her real estate, which is the land described in this bill, to John H. Russell, and his title afterwards came to the complainant. But, of course, the title or ownership of the complainant in the land was subject to the right of the executor afterwards, if necessary, to cause it to be taken and sold for the payment of the debts of the estate. It further appears that suit was brought by George F. Russell against John H. Russell as executor, and the judgment complained of was obtained in November, 1897. In March, 1898, the executor petitioned the probate court for license to sell the real estate described, for payment of debts, and after due proceedings, on April 13, 1898, that court decreed that he have license to sell at public or private sale, without giving bond. No appeal was taken from this decree. License was issued, and under it, the executor sold the real estate to George F. Russell, and made, executed and delivered to him a deed of the same. It should be said, also, that the testatrix, in the will, requested that "no official bond be required to be filed by" the executor "in his said capacity."

In view of the conclusion we have reached, it is not necessary to state any other facts. The first question which arises concerns the validity of the executor's deed. If that was invalid, then the complainant has a plain and adequate remedy at law, without the aid of the court in equity, and it will not be necessary in this case to consider the questions of fraud and collusion. For if the deed fails, all prior proceedings are, for the present, immaterial.

The presiding justice found that the probate court, in granting

the license, "adjudged, that under the provisions of the will, no bond was required," and ruled that, as no appeal was taken, the decree was conclusive. Was this ruling correct?

The jurisdiction and powers of the probate court, with respect to the settlement of the estates of deceased persons, are defined by statute. That court has no common law jurisdiction. Its jurisdiction is special and limited, and it has no powers save those conferred upon it by statute. So it is likewise true that the proceedings in petitioning for license to sell real estate, when it is necessary for the payment of debts, the granting of the license, and the conditions precedent to the authority to make a valid sale, are all regulated by statute. It is provided in R. S., c. 71, § 4, that persons licensed to sell real estate, "before proceeding to make such sales . . . . shall give bond to the judge for a sum, and with sureties to his satisfaction," conditioned for observing all provisions of law for the sale, for using due diligence, and for applying and accounting for the proceeds of the sale. This is the requirement of the statute, irrespective of the decree of the judge of probate. The giving of such a bond is a prerequisite to the right by the executor to make a valid sale. *Campbell* v. *Knights*, 26 Maine, 224; *Parker* v. *Nichols*, 7 Pick. 111. In these cases, the sales were held invalid, on account of the failure of executors to make the oath then required by statute, but the reasons given are equally applicable here. Such sales are in derogation of the rights of heirs and devisees, and it has always been held that a purchaser under such a statute sale is bound to show strict compliance with statutory requirements, if his title is called into question. It follows then, that unless relieved by other sections of the statutes, the executor acquired by his license no authority to sell; and if he had no authority, he could not make a valid sale. The supposed authority for issuing such a license without bond is found in R. S., c. 64, § 8, where it is provided that "letters testamentary may issue, or *sales of real estate may be made under the provisions of a will*, without the executor giving bond . . . . when the will so provides." But this provision is of no avail here. This sale was not made "under the provisions of a will." This will makes no provisions

for the sale of real estate.  It gives no authority to the executor to sell real estate.  It is silent in regard to the disposition of the real estate, except by devise.  A testator in his will may authorize his executor to sell the real estate, to pay legacies or debts, and he may authorize him to do so without giving bond.  A testator may do this, but the court cannot.  And this testator did not give such authority.

The defendants strongly contend, however, that it is now too late to question the validity of the license or of the sale made under it.  Their position is that the judge of probate had jurisdiction of the subject matter, and that his decree therein, not appealed from, is conclusive.  As to this, it may be observed, in the first place, it is the statute, and not the judge of probate, which imposes upon the executor the duty of giving bond.  The decree of the judge cannot make it any more or any less his duty to give a bond. The judge has no authority given him by statute to excuse the giving of such a bond.  It may be argued that the judge of probate must of necessity decide in each instance whether a bond is required by statute or not.  So he must.  But if he decide erroneously, as in this case, does it follow that his decree, in violation of the statute, remains in force, until reversed?  If so, he may, by mistake, nullify a statute.  Is not such a case rather like the many others where judges of probate have assumed jurisdiction, and mistakenly exercised powers not given them by statute, and where their decrees have been held to be void?  Suppose, for instance, that a judge of probate should erroneously issue letters of administration to an administrator, or letters of guardianship to a guardian, without taking bond, would such persons be authorized to act?  Suppose he should grant administration, in violation of the statute, after the intestate had been dead twenty years, as in *Wales* v. *Willard*, 2 Mass. 124; or suppose he should appoint a guardian to an insane person without inquisition, and without notice, as in *Coolidge* v. *Allen*, 82 Maine, 23; is there any question but that such decrees would be void?  We think not.  It has been so held in the cases cited, and in many others.  See *Hunt* v. *Hapgood*, 4 Mass. 117; *Sumner* v. *Parker*, 7 Mass. 77; *Smith* v. *Rice*, 11 Mass. 507.

⋅ In the cases above supposed, the probate court would undoubtedly have jurisdiction to grant administration, or to appoint a guardian, but in so far as it exceeded its statutory powers in the exercise of its jurisdiction, its acts would be void ; and being void, we think they would not be validated by the failure to take an appeal.

We think some confusion may have arisen in the use of the word "jurisdiction" in the decisions. It is frequently said that the decrees of probate courts, touching matters *within their jurisdiction*, when not appealed from, are conclusive upon all persons. See *McLean* v. *Weeks*, 65 Maine, at p. 421 ; *Decker* v. *Decker*, 74 Maine, 465. And hence it may have been concluded that inasmuch as the licensing of sales of real estate is within the jurisdiction of the probate court, therefore all its decrees relative thereto are conclusive. But we think this conclusion is not the correct one. The rule is stated more precisely and accurately in *Waters* v. *Stickney*, 12 Allen, 1, where it is said that " decrees of probate courts in matters of probate, *within the authority conferred upon them by law*, are conclusive." The distinction we note has been discussed in cases in this state and Massachusetts.

In *Smith* v. *Rice*, 11 Mass. 507, (decided in 1814, while we were a part of Massachusetts), the court said : " But if it appear that the judge of probate exceeded his authority, or that he has undertaken to determine the rights of parties over whom he had no jurisdiction, . . . . or that he has proceeded in a course expressly prohibited by law, in all such cases, the party aggrieved, if without any laches on his part he has had no opportunity to appeal, may consider the act or decree void. . . . . The defect is not confined to what may be considered strictly a want of jurisdiction of the cause; but if the inferior tribunal proceed in a manner prohibited, or not authorized by law, the proceeding is void." This case was cited with approval of this position in *Peters* v. *Peters*, 8 Cush. 529.

In *Wales* v. *Willard*, 2 Mass. 124, the court said : " It (a decree not appealed from) is not therefore an erroneous exercise of his judgment, but it is an assumption of power against law, and the

grant is ipso facto a nullity." There, as here, the point was raised that the decree was conclusive until reversed on appeal, and it was expressly overruled. *Sumner* v. *Parker*, 7 Mass. 79.

The court in *Pierce* v. *Prescott*, 128 Mass. 140, after stating the rule that judgments of probate courts on all matters within their jurisdiction are conclusive, said : " The law is so laid down by this court, although it is sometimes said, as if in qualification of the rule, that, although the probate court has jurisdiction over the subject matter, yet if it clearly exceeds its powers, or does an act prohibited by law, its decree may be avoided in collateral proceedings as well as by appeal; but this is only one way of saying that where the jurisdiction of the court over the subject matter is in any particular limited, then its decree is not binding, if it oversteps the limits fixed. It is not in such case the indiscreet exercise of a power granted, but the doing of an act for which no power is given, or which is expressly prohibited."

Our own court, in *Coolidge* v. *Allen*, supra, said: " It is undoubtedly true that a judgment of the probate court upon matters within its jurisdiction is conclusive until it is reversed. But it is equally true that jurisdiction of the subject matter only is not sufficient. The preliminary requisites, and the course of proceedings prescribed by law, must be complied with or jurisdiction does not attach, and the judgment will be, not voidable merely, but void, and may be avoided by plea and proof."

The distinction noted is well illustrated in this case. The judge of probate adjudged that there was a necessity for the sale of the real estate to pay debts. Such a judgment would be conclusive unless appealed from. It is a question which the law authorizes him to determine. It is within his jurisdiction to decide whether there is a necessity for a sale or not. But the law has not authorized him to decide that an executor, need, or need not, give a bond before he can sell real estate under a license. The statute itself has decided that question.

We are, therefore, of the opinion that the decree of the probate court licensing the sale of the real estate without bond is open to attack collaterally, in an action at law, as well as by appeal, and that therefore the complainant does not require relief in equity.

The complainant is not in possession of the land, and for that reason he cannot seek to have the alleged cloud upon his title arising from the executor's deed removed by proceedings in equity. He has a plain, adequate and complete remedy at law. As was said in *Robinson* v. *Robinson*, 73 Maine, 170, "it is not the purpose of equity to try titles to real estate and put one party out of possession and another in." *Gamage* v. *Harris*, 79 Maine, 531, and cases cited.

The bill must be dismissed, and we think, under the circumstances of the case, it should be dismissed without prejudice and without costs. If the defendant Russell seeks further to collect his judgment, all the questions involved can, and properly should, be determined by the probate court, either upon a new application for license to sell real estate, if any is made, or upon a settlement of the executor's account.

*Bill dismissed without prejudice.*