352

VIOLA NEELY, ADM'X *vs*. HAVANA ELECTRIC RAILWAY COMPANY.

Kennebec.        Opinion, January 8, 1940.

*Gordon F. Gallert,*
*Harvey D. Eaton,*
*Murray L. Halpern,* for plaintiff.
*McLean, Fogg & Southard,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

THAXTER, J. The plaintiff, as administratrix of the estate of Roy H. Neely, appointed by the Probate Court in and for the County of Kennebec, brings this action of assumpsit to recover payments claimed to be due from the defendant under a contract evidenced by certain correspondence and related documents which will be referred to later. The case is before us on report.

May 1, 1910, the Havana Electric Railway Company wrote to Mr. Neely accepting an offer from him to take over certain rights, which had previously been granted to Barron G. Collier, Inc., to place advertising matter in all of the fixed upper glasses in the cars of the Havana Electric Railway Company. The concession was to run from May 1, 1910, to December 31, 1913, and for it Neely was to pay $400 per month. There was a provision for rescission under certain conditions, and in case of such rescission the company was to pay Neely all sums received by it for such advertising over and above the sum of $4,800 per annum. Such payments were to be paid "as compensation for looking after the maintenance of the said advertisements and all other affairs connected therewith."

Before this contract expired, the Havana Electric Railway Light & Power Company appears to have succeeded to the rights of the railway company and to have assumed its obligations; and in 1926 this defendant, a Maine corporation, succeeded to the rights and assumed the obligations of the power company. For our purposes, however, these various corporate transformations are not important, and the case will be treated as if the present defendant, which will be referred to as the company, were the only one involved.

On October 15, 1913, the contract was extended to November 30, 1918. Thereafter but on the same day the company signed a con-

tract with the Henry Clay and Bock & Co., Ltd., granting to it the privilege at a rental of $10,000 per year for a period of five years from December 1, 1913. As a consequence the company exercised the privilege of rescission contained in its contract with Neely and became obligated to pay Neely the difference between the $4,800 which he was to pay and the $10,000 which it was to receive under the new arrangement. In accordance with the agreement this payment was to be for "compensation for looking after the maintenance of the advertisements and all other affairs connected therewith."

August 9, 1918, the company wrote a letter to Henry Clay and Bock & Co., Ltd., extending the agreement for twelve months from its expiration or until December 1, 1919, and there is a notation on this letter that the contract with Mr. Neely was extended for a like period. There is no writing continuing the agreement beyond this time but it is apparent from the acts of the parties and from subsequent correspondence that it was extended for another five years to expire November 30, 1924.

On April 17, 1924, the company wrote a letter to Neely suggesting a new arrangement to take effect December 1, 1924, and to run to December 1, 1940. As the proposition set forth in this letter, which was accepted by Neely, is the basis for the present action, we set it forth in full:

" 'HAVANA ELECTRIC RAILWAY, LIGHT & POWER CO.

Havana

F. Steinhart, Pres.
and General Manager

Havana, Cuba, April 17th, 1924.

Mr. Roy H. Neely
Havana, Cuba.

Dear Sir:

The contract heretofore entered into with the HENRY CLAY AND BOCK & CO., LTD., having practically expired, inasmuch as the said Company has transferred its contract, which expires November 30th, 1924, to the COMPANIA ANUNCIADORA LUMINICA S. A., the HAVANA ELECTRIC RAILWAY LIGHT AND

POWER COMPANY has made arrangements with the BARRON G. COLLIER, INC., Candler Building, New York City, New York, for advertising on the fixed upper window glasses in the cars of this Company from December 1st, 1924, to December 1st, 1940, and in view of the rights heretofore acquired by you for advertising on the said fixed upper window glasses, the HAVANA ELECTRIC RAILWAY LIGHT AND POWER COMPANY will pay to you from the amount received from the BARRON G. COLLIER, INC., the sum of Six thousand ($6,000.00) dollars per year, the same as up to date, in monthly installments of Five Hundred ($500) dollars each during the time the said BARRON G. COLLIER, INC., exercise their advertising privileges.

Kindly express your acceptance of the above in a duplicate copy of this letter for the files of the Company.

Very truly yours,

F. STEINHART<br>President.

HAVANA ELECTRIC RAILWAY LIGHT AND POWER Co.
I hereby accept the above:
    'ROY H. NEELY.' "

Payments were made under this agreement each month at the rate of $500 per month including the one due October 1, 1930, which covered the month of October of that year. On October 3 Neely died. The company informed Mrs. Neely by letter dated December 12, 1930, that it could make no further payments as the contract was a purely personal matter of Mr. Neely and the company's obligation under it ended at his death.

Numerous defenses are set up in a brief statement. In so far as they are relied on in argument they may be summarized as follows:

1. That the appointment of Mrs. Neely as administratrix was void because the Probate Court in and for the County of Kennebec was without jurisdiction.
2. That there was no valid contract existing between Neely and company because
   a. It was *ultra vires*.

    b. There was no authority shown on the part of the officers of the company who purported to make the agreement.

3. That if any contract existed it was a contract for personal services and ended with Neely's death.

4. That it was limited by its provisions to the time Barron G. Collier, Inc., exercised its advertising privileges and as payments were to be made from moneys received from Barron G. Collier, Inc., and since the contract was assigned by Barron G. Collier, Inc., to the Latin American Car Advertising Company, the defendant was under no obligation to Neely or to his estate.

5. That there was a prior obligation on the part of Neely to pay $400 per month which he has not paid.

6. That recovery is barred by the statute of limitations.

We shall consider these in their order.

1. The defendant was incorporated under the laws of Maine in 1926 and is a citizen thereof. It is well settled that a debt is an asset in the hands of the creditor while living and that on his death it becomes an asset of his estate at the residence of the debtor. *Saunders* v. *Weston*, 74 Me., 85; *Brown* v. *Smith*, 101 Me., 545, 64 A., 915. We do not understand that defendant's counsel contend otherwise. But they claim that the Probate Court was without jurisdiction to grant administration under the provisions of R. S. 1930, Chap. 75, Sec. 9, because a prima facie case showing that the debt was due had not been made out. No authority is, however, cited in support of such contention; and it may well be asked how such a claim could be established even prima facie without the appointment of an administrator within this jurisdiction who would have authority to bring suit. The record discloses no want of jurisdiction in the Probate Courts which granted administration to this plaintiff; and it is well settled that decrees of Probate Courts in matters of probate, within the authority conferred upon them by law, are, when not appealed from, conclusive on all persons and are not subject to collateral attack. *Harlow* v. *Harlow*, 65 Me., 448; *Snow* v. *Russell*, 93 Me., 362, 45 A., 305; *Chaplin, Judge of Probate* v. *National Surety Corporation*, 134 Me., 496, 185 A., 516; *Havana Electric Railway Co., Ap'lt, In re Estate of Roy H. Neely*, 136 Me., 79, 1 A., 2d, 772. The plaintiff can properly maintain this suit.

2. The claim that the contract was *ultra vires* seems to be based on the assumption that the company received nothing in return for its promise to pay Neely. This question of want of consideration will be discussed later.

Assuming the contract is otherwise lawful, we do not see how it can be successfully attacked on the ground that Mr. Steinhart did not have authority to bind the company. He was its president and had negotiated with Neely and with others on this matter over a long period of time and none of his acts had ever been questioned by the company. On the contrary in every instance they seem to have been ratified and the company had paid Neely large sums of money in carrying out its part of the various agreements. Under such conditions his authority to act for the company will be implied. *Hazeltine* v. *Miller*, 44 Me., 177.

3. The defendant strenuously contends that this was a contract for personal services and ended with the death of Neely.

It is true as claimed by the defendant that when the arrangement was first made between Neely and the company Neely did have services to perform in connection with the advertising. The letters of May 1, 1910, and October 15, 1913, recite that payments to Neely are "compensation for looking after the maintenance of the advertisments and all other affairs connected therewith." It is significant that this language is omitted from the letter of April 17, 1924. That letter, except for the recital that the monthly payments are to be the same, indicates an entirely different arrangement. The advertising concession is turned over to Barron G. Collier, Inc.; and in view of "the rights heretofore acquired" by Neely, he is to be paid $6,000 per year from December 1, 1924, to December 1, 1940, out of money received from Barron G. Collier, Inc. In so far as the agreement indicates, there were to be no services performed by Neely. It is difficult to see how there could be any, because the whole matter was in the control of the new holder of the concession.

Not only does the correspondence show that Neely was to be paid a sum in installments as compensation for rights previously acquired, but a careful reading of the evidence satisfies us that from December 1, 1924, till his death he performed no personal services in connection with it. The agreement between the company and Barron G. Collier, Inc., dated March 21, 1924, indicates that the new

owner was to do all the work in connection with the placing of the advertisements in the cars. The testimony of Charles W. Ricker, the assistant general manager and chief engineer of the company, and ten exhibits introduced in evidence with that testimony, prove that Neely did have duties to perform; but it is significant that such evidence refers to a time prior to 1924. On the other hand, the testimony of Bernard V. Swenson, an employee of the Collier Company, shows that this company's own men took over the work formerly done by Neely. In this respect the acts done in performance of the contract are in accord with the interpretation which we feel its language compels. The general statement by Salvador Soler Y Cabezas, the assistant treasurer of the defendant, and the conclusion of Mario DeJ. Augulo Y DeCardenas that the payments to Neely were for services rendered do not overcome the force of such other evidence.

The defendant argues that if such is the interpretation of the agreement there was no consideration for the payments made to Neely. We do not see why this conclusion must follow. It is true that the evidence does not show what the consideration was. But the letter of April 17, 1924, recites a consideration and there is nothing in the evidence to contradict that recital. Moreover for a period of six years the company made payments to Neely of $6,000 per year in accordance with the provisions of that letter; and we must assume until the contrary appears that those payments were for a valid consideration and were not a wrongful diversion of the corporate funds.

The letter on its face shows a contract under the terms of which the company agreed to pay Neely $6,000 per year until December 1, 1940, out of money received from Barron G. Collier, Inc., and until Neely's death that agreement was carried out. It was not a contract for personal services and did not terminate with Neely's death.

4. The contract was limited to the "time the said Barron G. Collier, Inc., exercises their advertising privileges." In interpreting this provision we must look at the substance of what took place rather than at the form. January 1, 1929, the Collier company assigned the contract to the Latin American Car Advertising Company. This company was registered in Cuba and in accordance with terms of a letter from the Collier company to the Havana Electric

Railway Company the assignment was made because of tax conditions. The letter specifically states that Barron G. Collier, Inc., is not released from its obligations and that the measure is "more or less perfunctory action." The defendant thereafter continued to treat its contract with Neely as still in force and properly so. It can not now claim after his death that this purely formal action on the part of the Collier Company released it from its obligation.

5. Whether Neely was in default on any payments to be made by him on contracts prior to that of 1924 is a matter of but little importance. The letter of April 17, 1924, seems to show a clean slate at that time, and in any event any prior defaults were taken care of by that contract. Under its provisions there was no obligation on Neely to make any further payments.

6. The defendant admits that by the great weight of authority the statute of limitations does not commence to run against a claim in favor of the estate of a deceased person accruing after death until the appointment of an administrator or an executor. *Murray* v. *East India Co.*, 5 B. & Ald., 204; *Root* v. *Lathrop*, 81 Conn., 169, 70 A., 614; *Clark* v. *Amoskeag Manufacturing Co.*, 62 N. H., 612; *Riner* v. *Riner*, 166 Pa., 617, 31 A., 347; see also cases cited in Note 74 A. L. R., 837. We see no reason for not following the general rule. As administration was not taken out until 1937 the statute of limitations is not a bar to a recovery in this case.

This brings us to a consideration of the amount due the plaintiff.

Plaintiff's counsel has submitted figures taken from the record showing payments to the defendant under the Collier contract amounting to $47,500.00 commencing November, 1930; and claims as we understand it $40,500.00 being for payments at the rate of $500.00 per month from October, 1930, to the date of the writ. We are satisfied that a proper construction of the agreement requires that each year should be treated as a separate entity, and that only payments received during a year or properly allocable to a certain year can be considered in determining the amount due. Under this method of figuring, the plaintiff is entitled to $1,000.00 for the balance of the year 1930. Payments seem to have ended in August, 1931, but as to that time $23,250.02 for that year had been turned over, the plaintiff is entitled to recover the full amount of $6,000.00. In August, 1932, the terms of the 1924 agreement were amended.

Under the contract as so modified the Collier Company was to pay a certain percentage of the advertising receipts but with a minimum amount of $1,000.00 per month, and in addition $250.00 per month on back payments. Under this arrangement there was paid from August, 1932, to December, 1932, inclusive, the sum of $6,500.00. $1,000.00 of this amount was, however, properly allocable to the year 1931. As a consequence the plaintiff was entitled to receive for the year 1932 the sum of $5,500.00. Thereafter no more payments were made until February, 1935. There was paid in 1935, and in January, 1936, but properly allocable to 1935, the sum of $12,000.00. There is a suggestion that these payments were also in settlement of amounts due for 1933 and 1934 but we are not satisfied that this is so, and conclude that this amount was properly allocable to 1935. From such payments the plaintiff is entitled to receive the sum of $6,000.00 for that year. Commencing with 1936 an entirely new arrangement was made. Whether there was at that time a rescission of the contract of 1924 which would release the defendant from its obligation under the Neely contract, it is unnecessary to decide, for there is nothing in the record to show what payments were made for the years 1936 and 1937. We therefore hold that the plaintiff is entitled to recover $1,000.00 for the year 1930, $6,000.00 for the year 1931, $5,500.00 for the year 1932, and $6,000.00 for the year 1935. The entry will therefore be:

*Judgment for the plaintiff for $18,500 with interest from the date of the writ.*

(DUNN, C. J., having deceased, did not join in this opinion.)