ROGER CLOUGH, EX'R OF ESTATE OF
JEANETTE G. CLOUGH

*vs.*

BERTON L. NEWTON

AND

IDA C. NEWTON

Oxford.    Opinion, October 12, 1965.

*Gerry Brooks,* for Appellant.

*Henry H. Hastings,* for Appellees.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J. On appeal. The late Jeanette G. Clough executed a note April 10, 1959 for $1,000.00 secured by mortgage on real estate, to Berton L. and Ida C. Newton (Newton), which had not been paid upon the death of said Clough. Appellee Roger Clough is the Executor of the will of said Jeanette G. Clough.

The Jeanette G. Clough Estate having been declared insolvent, commissioners of insolvency, under the provisions of Section 3, Chapter 157, R. S., were appointed on August 28, 1962 by the Probate Court of Oxford County by warrant in usual form and in conformity with the statute, including the mandate reflecting Section 7 of the same Chapter, which directed that "if any claimant holds security for his claim of less value than its amount, you will state the amount allowed on the claim and the value of the security, but you will

allow only the difference between such amount and the value of said security, giving the claimant a certificate of your value of said security."

The warrant also directed that "6 months from the date hereof is allowed for the presentation of claims, at the end of which time you will return this warrant into our said court with your report thereon * * * ," this also reflecting the provision of the statute.

Newton in October, 1962, seasonably, filed under oath a proof of claim against the Clough Estate with an annexed account showing a balance due on the principal of the mortgage of $565.23 plus interest computed to October 1, 1962 and in the proof of claim declared "that there is no security for said claim except a note * * * and a mortgage securing the same, which is recorded * * * ."

Newton instituted foreclosure of his mortgage May 16, 1963.

The date of hearing by the Commissioners on the Newton claim does not appear, but the Commissioners rendered their report over date of June 10, 1963 alleging that having given the required notice they had received and decided upon all claims and included the Newton claim in the amount of $599.14 as an unsecured claim, with no mention, or determination of the value, of the security behind the claim. The Commissioners' report was accepted by the Probate Court June 11, 1963 and fees and charges allowed. No appeal was claimed.

It is to be noted that:

     a)   The report of the Commissioners was due February 27, 1963 and was tardy by a period in excess of 3 months.

     b)   That foreclosure of the mortgage was not instituted until after the Commissioners' report was more than 2 months overdue, and

c) That Section 9 of Chapter 157, R. S., declares a forfeiture of compensation for Commissioners who neglect to render their report for 3 months after the expiration of the time allowed them for receiving claims.

Appellant, as executor of the Estate of Jeanette G. Clough, filed a complaint August 28, 1963 alleging that Newton had by his process in the Probate Court waived his security and prayed an injunction against the foreclosure of the mortgage. The Superior Court at its February 1964 Term held, citing *Nickerson* v. *Chase,* 90 Me. 296, 38 A. 175, as its authority, that Newton had waived his security and that the mortgage and its attempted foreclosure was void. Newton appealed.

This proceeding is a collateral attack upon the judgment of the Probate Court which, by accepting the Commissioners of Insolvency report, has held that the Newton appearance before the Probate Court through his proof of claim waived his security theretofore supplied by the mortgage and, as against the Clough Estate, he stands as an unsecured creditor.

It must first be declared that there is error in permitting *Nickerson, supra,* to govern the case. In the press of trial court business the factual difference between *Nickerson* and the present case was overlooked. In *Nickerson* the claimant "presented his whole claim to the commissioners on oath, declaring that it was justly due him, and that he had no security therefor. The commissioners allowed and reported his whole claim to the probate court and their report was there accepted. By this procedure all security was waived and surrendered, for the creditor could not receive a dividend on his whole claim and hold his security as well. * * * If he voluntarily proves his whole debt, he thereby necessarily waives his security; but waiver arises from the voluntary act of the creditor." *Nickerson, supra,* at 297.

"Waiver is a voluntary, intentional relinquishment of a known right. * * * A waiver may be express or implied. In the absence of an express agreement it will not be implied contrary to the intention of the party whose rights would be injuriously affected thereby unless by his conduct the opposition party has been misled to his prejudice into the honest belief that such waiver was intended or consented to. To make a case of waiver of a legal right there must be a clear, unequivocal and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part. * * * There must appear, not mere negligence to claim the right, but a voluntary choice not to claim it." *Medomak Canning Company* v. *York,* 143 Me. 190, 195, 57 A. (2nd) 745.

Here the claimant, though stating his claim in full, and reciting his mortgage, failed to state "the amount of credit to be given according to his best knowledge and belief." (Section 5, Chapter 157, R. S.) Such indifferent pleading may well have raised a question in the minds of the Commissioners as to his intent, but under the statute (Section 5, same) the Commissioners are required to "adjudicate upon all claims so filed" and under Section 7, same, and the warrant to them directed, it became the responsibility of the Commissioners to determine the value of the security, — and to allow claimant the difference between the value of the security and the claim, if the security were of less value than the claim, and give claimant a certificate thereof.

From the report of the Commissioners it may be inferred that claimant failed to appear at the assigned time and place to prosecute his claim as a secured claim, but the report does not so state as a basis for considering that he had voluntarily and deliberately chosen to waive his security. Of significance is the fact that Newton began foreclosure of his mortgage only after the time had expired for the report of the Commissioners to have been returned and before the

report was returned. As of the date of the Commissioners report it was obvious that Newton relied on his security. On the record before us the mandate to the Commissioners was not executed.

> "The commissioners, of their own motion, could not allow the whole debt and thereby work a waiver of the security in favor of all the creditors." *Nickerson, supra,* at 297.

The action of the Probate Court in accepting a legally insufficient report from the Commissioners was error. It had the power and duty to recommit the report for correction of error. (Section 8, same).

Upon these premises, is the Probate Court decree open to this collateral attack? The answer to this question depends upon whether the now challenged decree is *void* or, over simply expressed, *voidable.*

Acknowledging the well established principle that "decrees of probate courts in matters of probate, *within the authority conferred upon them by law,* are conclusive."[1] (Against collateral attack) *Snow* v. *Russell,* 93 Me. 362, 376, 45 A. 305, (*Waters* v. *Stickney,* 12 Allen (94 Mass.) 1, 1866)) ; *In Re Estate Roy H. Neely,* 136 Me. 79, 81, 1 A. (2nd) 772, a void decree is open to either direct or collateral attack. *Snow, supra,* at 377; *Taber* v. *Douglass,* 101 Me. 363, 370, 64 A. 653.

> In *Snow* an attempt was made by bill in equity to attack collaterally an executors deed based upon a license to sell real estate, granted, contrary to statute, without requiring a bond. The license and sale were declared void and open to collateral attack, but not in equity, there being remedy at law (real action).

---

[1] See comment in *Snow* at Page 376 relative the use of the word "jurisdiction" as distinct from "authority conferred by law."

In *Taber* an action on the case attacked collaterally an adoption which was declared void.

Direct attack of a void decree may be made by the conventional appeal, *Waitt, Appellant,* 140 Me. 109, 34 A. (2nd) 476, or by petition to annul presented directly to the court of origin, even though the time for direct attack by appeal has expired.

> "It is well settled that a probate court has the power and duty upon subsequent petition, notice and hearing to vacate or annul a prior decree, * * * clearly shown to be without foundation in law or fact, and in derogation of legal right." *Merrill Trust Company v. Hartford,* 104 Me. 566, 572, 72 A. 745.

See also *Tripp v. Clapp,* 126 Me. 534, 537, 140 A. 199; *Roukos, Appellant, Etc. In Re Estate of Roukos,* 141 Me. 83, 89, 39 A. (2nd) 663; *Knapp, Appellant, Etc. In Re Estate of Fred E. Knapp,* 149 Me. 130, 138, 99 A. (2nd) 331.

As to probate decrees "within the authority conferred by law" upon probate courts but not "in accordance with the admonition of the statute" *Roukos, supra* (141 Me.) at 87, such are open only to direct attack. Obviously, by appeal, and also by petition to annul, as established by cases cited above. The distinction is illustrated, coincidentally, by *Roukos, supra* (direct attack) in 141 Me. and *Roukos, Appellant, Etc.* (collateral attack) in 140 Me. 183, 188, 35 A. (2nd) 861.

Here the power to deal with estates determined to be insolvent, the appointment of commissioners, the supervision of their function and action upon their report were statutorily placed in the Probate Court. (Chapter 157, R. S., *supra*). The court's action in the premises was correctly within the authority conferred upon it by law, was not void and thereby open to collateral attack, but as an erroneous

acceptance of an incomplete and insufficient report was reachable only by direct attack, — appeal or petition to annul. No appeal was taken.

This collateral attack upon the probate decree accepting the Commissioners report and thereby relegating Newton to the status of an unsecured creditor of the Clough Estate cannot be sustained.

To sustain this appeal will result in affirming the validity of the mortgage, with the intolerable result that Newton will have the Clough real estate under foreclosure and at the same time have a subsisting award against the Clough Estate for the full amount of his claim, to the detriment of other creditors.

To deny this appeal will result in affirming indirectly the erroneous probate decree depriving Newton of the security which the record before us does not establish that he has surrendered.

We, therefore, continue the appeal to enable a direct attack to be prosecuted in the Probate Court to annul the erroneous decree of the acceptance of the Commissioners report, whereby the status of the Newton claim as a secured claim may be determined in accordance with the statute and to enable the parties thereafter to dispose of the claim within the Probate Court in accordance with usual practice.

Upon being advised of the conclusion reached in the Probate Court appropriate entry will be here made.

*So Ordered.*