STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
Docket No. AP-07-55

2008 JUN 26 P 4: 10

SIDNEY ST. F. THAXTER and
MARY E. MCCANN THAXTER,

Plaintiffs,

v.

DECISION AND JUDGMENT
(M.R.Civ.P. 80B)

ZONING BOARD OF APPEALS,
CITY OF PORTLAND, and
JOSHUA C. EMPSON,

Defendants.

## I. BEFORE THE COURT

This matter comes before the court on the petitioners' second Rule 80B from a decision of the Zoning Board of Appeals for the City of Portland (City) granting a building permit to Joshua Empson (Empson) an abutting property owner to the Thaxters.[1]

## II. HISTORY AND BACKGROUND

The petitioners, Sidney St. F. Thaxter and Mary E. McCann Thaxter (Thaxter), own property on Cushings Island in Portland that abuts property owned by Empson. Under the City of Portland Code of Ordinances (Ordinance), Empson's lot is located in the IR-1 zone, which requires a minimum lot size of 40,000 square feet in order to accommodate a subsurface wastewater disposal system when a property owner seeks a permit for new development. City of Portland Code of Ordin. §§ 14-145.1, 14-145.5(a)(7). Because Empson's lot is less than 20,000 square feet, it does not meet the

---

[1] The plaintiffs filed a previous 80B action where the court vacated the issuance of the building permit and remanded the case to the Zoning Board for further determination. *See* Docket No. AP-07-8.

minimum lot size requirement on its own. However, the Ordinance contains a provision that allows a piece of property to be combined with a non-contiguous lot in order to satisfy the minimum lot size if the City is granted a conservation easement on the second lot, and the land burdened by the conservation easement is not "encumbered by any other easement which prohibits all construction on that lot." *Id.* at § 14-145.5(a)(8)(e).

In December 1995, Thomas Bethea and Pamela Allen (Bethea/Allen) granted a conservation easement (1995 easement) to the City on a piece of property owned by them for the benefit of the Empson lot. That same piece of property was also encumbered by a view easement (1990 easement) from Bethea/Allen to John and Sandra Donnelly (Donnelly) in January 1990.

On October 16, 2006, the City issued a building permit to Empson and the Thaxters appealed to the ZBA which denied the appeal by a 3-1 vote after a hearing on January 4, 2007. The Thaxters appealed to this court pursuant to M.R.Civ.P. 80B, *see Thaxter v. City of Portland et al*, 2007 Me. Super. LEXIS 183 (Aug. 30, 2007). After hearing, this court remanded the case to the ZBA after finding that there was not a sufficient majority of votes for the ZBA to deny the appeal and that there was an inadequate record for review.

After a second hearing before the ZBA, the Board voted 4-1 to again deny the Thaxters' appeal.

### III. DISCUSSION

### A. Standard of Review

This court will uphold a zoning board's decision unless that decision is an abuse of discretion, contrary to law or lacks the support of substantial evidence on the record. *Uliano v. Board of Environmental Protection*, 2005 ME 88 ¶¶ 6-7, 876 A.2d 16, 18.

The interpretation of a zoning ordinance is a question of law that the court reviews *de novo*. *Brackett v. Town of Rangeley*, 2003 ME 109 ¶ 15, 831 A.2d 422,427; however, the court may not substitute its own judgment for that of the Board on factual determinations. *Forbes v. Town of Southwest Harbor*, 2001 ME 9 ¶ 6, 763 A.2d 1183, 1186.

## B. Standing

Empson asserts that the Thaxters do not have standing to contest his receipt of a building permit because they have not demonstrated that the proposed development would cause them any harm. According to the Law Court, "[a] party's standing to bring a Rule 80B appeal is a function of whether the party participated in the administrative process and whether the party will suffer a particularized injury." *Norris Family Associates LLC v. Town of Phippsburg*, 2005 ME 102 ¶ 13, 879 A.2d 1007, 1012. It is clear from the record that the Thaxters participated in the administrative process, so the only question for this court is whether will they suffer a particularized injury.

Because the Thaxters are abutting property owners, there need only be "a conceivable injury" to satisfy the second standing requirement. *Id.* ¶ 19, 879 A.2d at 1017.

The Thaxters assert that construction on the undersized Empson lot will cause harm "to their view, to the rustic character of the island and to their peace and quiet enjoyment of their property if a generator is placed as close to the Thaxters' house as possible."[2]

The court recognizes the unique nature of property in this neighborhood and that the majority of owners use it to seek a respite from the hustle and bustle of every

---

[2] *See* n. 1 of petitioners' reply brief. This refers to remarks at the ZBA hearing by William Meserve, petitioners' co-counsel and a property owner on the island. The remarks are Meserve's characterizations and do not reflect findings of the Board. Furthermore, support for the location of the generator is not found in the referenced part of the record.

3

day life on the mainland. Views and quiet enjoyment of island homes and coastal properties are very important and cherished part of life in Maine. Thus, it is not only conceivable, but probable that the Thaxters will suffer some intangible injury if Empson is allowed to build a summer residence next to the Thaxters; therefore, they do have standing.

## C. 1990 View Easement

"Although the terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole, . . . [the court look[s] first to the plain language of the provisions to be interpreted." *Gensheimer v. Town of Phippsburg*, 2002 ME 22 ¶ 22, 868 A.2d 161, 167 (quotations and citations within are omitted]. "[The court should] look first to the plain language of the provisions to be interpreted. *Id.* The court also "must construe an ordinance reasonably to avoid an absurd result." *Lipman v. Town of Lincolnville*, 1999 ME 149 ¶ 5, 739 A.2d 842, 843. Additionally, the construction of a deed is a question of law. *N. Sebago Shores LLC v. Mazzaglia*, 2007 ME 81 ¶ 13, 926 A.2d 728, 733.

Although the written conclusion of the ZBA is quite concise, it is clear that the Board interpreted the language of the 1990 view easement to allow for the possibility of construction. According to their decision, "[t]he view easement allows certain cutting with restrictions, allows under-grade and even-grade improvements, and allows construction with consent. The speculation with the view easement is the problem, because it could allow some construction." Even though the ZBA did not explicitly state as much, they apparently determined that the 1990 deed did not "prohibit all construction" as that phrase is used in section 14-145.5(a)(8)(e) of the Ordinance.

The relevant restrictions in the 1990 view easement are as follows:

4

(a) ***

(b) Upon prior written consent of Grantors, their heirs and assigns; Grantees, their heirs and assigns, may enter on the View Easement Land for the purpose of cutting (including removing) and trimming trees and bushes which obstruct water views over the View Easement Land . . . provided that: (1) Grantees, their heirs and assigns, shall not disturb the natural setting of the View Easement Land; shall not clear cut in the area, and shall not trim the trees or bushes in a fashion which shall endanger the health of the trees or bushes . . .

(c) Upon prior written consent of Grantees, their heirs and assigns; Grantors, their heirs and assigns, may cut or trim trees and bushes on the View Easement Land during the summer months, provided that: (1) Grantors, their heirs and assigns, shall not disturb the natural setting of the View Easement Land; shall not clear cut in the area, and shall not trim the trees or bushes in a fashion which shall endanger the health of the trees and bushes . . .

(d) Grantors, their heirs and assigns, shall not, without prior written consent of the Grantees, their heirs and assigns, construct any building, fences, or above-grade improvements, or plant trees, bushes or other landscaping, or place other objects on the View Easement Land.

The plain language of the view easement does not contain any expressed prohibition on construction. However, the Thaxters argue that the decision of the ZBA is incorrect because the practical effect of the 1990 view easement is to do just that. The respondents contend that the 1990 view easement does allow for some construction, particularly if there is agreement between the owners of the dominant and servient estates. Thus, they assert that the 1990 view easement did not serve as a barrier to the grant of the 1995 conservation easement for purposes of satisfying the minimum lot requirement contained in the Ordinance.

The Thaxters also argue that the restrictions contained in both the Ordinance and the 1990 view easement were intended to preserve the natural state of the island property and that it does not matter if the view easement can be modified or removed

at some future date because it effectively prohibits all construction by requiring agreement between the grantor and grantee of the easement.[3] The logical problem with this assertion, however, is that although the parties could agree to leave the land as it is, the easement as it is currently written would also allow them to agree to construction. In other words, the easement doe not have to be modified or removed to allow for construction, it simply requires that the property owners agree about it. While it is true that the terms of the easement would prohibit above-grade construction without consent from the holder of the easement, the fact remains that construction is possible under the plain language of the document.[4] Because that possibility exists, the easement does not "prohibit all construction" and does not serve as a barrier to the grant of the 1995 conservation easement or the issuance of the building permit.

---

[3] Empson points out that the original grantor sold the burdened parcel of land to one of the two holders of the view easement. Thus, the current owner of the servient estate, Sandra Donnelly (Donnelly), also holds the view easement jointly with her husband. Empson asserts that there is nothing to prohibit the Donnellys from developing the land if they chose to do so. However, because the burdened estate is owned by only one of them and they are both holders of the easement, the two property interests have not actually merged, as a married person in this State may own property in his or her own right. *See* 19-A M.R.S. § 801 (2007). Donnelly could therefore sell the property that is subject to the easement at any point. Moreover, there is no evidence in the record that would suggest that the 1990 view easement is no longer in effect.

[4] Although the parties have argued about whether or not the terms of the easement would allow for under-grade and even-grade construction without consent, it is unnecessary for the court to address this claim because the language clearly contemplates above-grade construction with consent.

## D. Municipal Estoppel[5]/Third-Party Beneficiary

According to the plain language of the 1990 deed (Bethea/Allen to Donnelly), the view easement does not prohibit all construction, particularly if the owners of both the dominant and servient estates agree. Therefore, it is unnecessary for the court to reach these arguments.

## IV. DECISION AND JUDGMENT

The clerk will make the following entry as the Decision and Judgment of the court:

A. The decision of the City of Portland Zoning Board of Appeals is affirmed.

B. No costs are awarded.

SO ORDERED.

DATED: June 26, 2008

Thomas E. Delahanty II
Justice, Superior Court

---

[5] Empson argues that the City is estopped from failing to issue the building permit because he relied on the City's interpretation in a 1995 letter of the 1990 deed and the Ordinance. The Thaxters assert that the ZBA was not entitled to consider the earlier interpretation, which they characterize as an *ex parte* proceeding. However, as the ZBA notes, there is no evidence in either the written decision or the transcript of the October 4, 2007 hearing that the ZBA considered the 1995 letter at all.

Date Filed __11-02-07__  __CUMBERLAND__  Docket No. __AP-07-55__
County

Action __80B APPEAL__

SIDNEY ST F THAXTER
MARY E MCCANN THAXTER

ZONING BOARD OF APPEALS
CITY OF PORTLAND
JOSHUA C EMPSON

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| SIDNEY ST F THAXTER ESQ<br>ONE CANAL PLAZA SUITE 1000<br>PORTLAND ME 04112-7320<br>(207)774-9000 | JAMES ADOLF, ESQ.(City of Portland)<br>389 CONGRESS STREET<br>PORTLAND, MAINE  04101-3509<br>874-8480<br><br>CHRISTOPHER NEAGLE, ESQ.<br>P.O. BOX 9711  (J. Empson)<br>PORTLAND, MAINE  04104-5011<br>780-6789 |