STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL ACTION
                                                  DOCKET NO. CV-08-144
                                                  _MMM-PEN-12/21/2009_


CEDAR GROVE HOMEOWNERS
ASSOCIATION and ROBERT
DORR,

            Plaintiffs,

      v.                                          **ORDER ON CROSS-**
                                                  **MOTIONS FOR**
                                                  **SUMMARY JUDGMENT**

FRANK PAWLENDZIO and
TOWN OF EDDINGTON,

            Defendants.


The plaintiffs, Cedar Grove Homeowner's Association and Robert Dorr, filed a

four-count complaint seeking declaratory judgments against the defendants, Town of

Eddington ("Town") and Frank Pawlendzio. Counts I and II of the complaint allege that

the Town's failure or refusal to complete the roads in Cedar Grove has (1) impacted

adversely the property values of homes in the subdivision; (2) prevented the Town from

accepting the roads as public ways; and (3) caused the plaintiffs to incur the costs of

maintaining and plowing the roads without assistance from the Town. Counts III and IV

of the complaint assert the same claims against Pawlendzio.[1] Ultimately, the plaintiffs

seek a Court order compelling the Town to complete construction of the roads, which

would permit Town to accept the subdivision roads as "public ways," and thereby relieve

the individual homeowners of Cedar Grove from the burden of providing for their own

---

[1] Counts III and IV of the complaint no longer have any bearing on the outcome of the litigation.
Defendant Pawlendzio filed for Chapter 7 Bankruptcy on December 3, 2008. Pawlendzio's personal
liabilities, if any, on the Cedar Grove subdivision were discharged by Order of the United States
Bankruptcy Court for the District of Maine on March 31, 2009.

1

road maintenance and plowing services. The parties have submitted cross-motions for summary judgment based on a stipulated statement of material facts, and the Court has considered those facts as well as the parties' oral arguments.

## BACKGROUND

The parties provided the Court with a stipulated statement of material facts that establishes a relatively clear record of events precipitating this litigation. In January 2001, Oak Ridge Builders ("Oak Ridge"), through Pawlendzio, proposed creating the five-lot subdivision known as Cedar Grove in the Town of Eddington, Maine. Phase I of the subdivision consisted of the construction of Comins Lane and the preparation of five lots in the proposed development. As part of the approval process, the Town's Subdivision Ordinance required Oak Ridge to provide the Board of Selectmen with an Improvement Guarantee to "insure that all required subdivision improvements be satisfactorily completed," including the roads at issue. Eddington, Me., Subdivision Ordinance § 341(6) (Mar. 19, 2002) [hereinafter Subdivision Ordinance]. The Planning Board granted preliminary approval of the Cedar Grove Subdivision on April 23, 2001. Subsequently, Pawlendzio, acting on behalf of Oak Ridge, offered a "draft" letter of credit from a local bank to the Town Board of Selectmen to serve as the required Improvement Guarantee. The letter of credit was not executed and did not specify an amount. Nonetheless, the Board of Selectmen voted on April 30, 2001 to accept the letter of credit pending signature and inclusion of a specific amount.

On May 21, 2001, the Planning Board granted Pawldenzio and Oak Ridge final approval to begin construction on the Cedar Grove Subdivision, noting, in part, that the

2

"Selectmen had accepted bank statement of credit." Pawlendzio and Oak Ridge then requested the Planning Board to approve two additional Phases to the Project, including the construction of Grandview Drive to accompany Phase II of the development and the construction of Sprucewood Drive to accompany Phase III of the development. The Planning Board accepted both phases of the subdivision in separate proceedings on July 9, 2001 (Phase II acceptance) and May 20, 2002 (Phase III acceptance). The Planning Board's final approval, as amended by Phases II and III of the development, required that all streets accompanying the subdivision development be completed within two years of the subdivision approval—or, by May 20, 2004. Subdivision Ordinance § 431.

Following the Planning Board's approvals, Oak Ridge commenced construction of the improvements, including the aforementioned roads: Comins Lane, Grandview Drive, and Sprucewood Drive. In June 2003, the Board of Selectmen, acting as the Board of Road Commissioners, hired engineering firm S.W. Cole to conduct an inspection of the roads in the subdivision. In a report dated July 30, 2003, S.W. Cole's inspection revealed that neither Grandview Drive nor Spucewood Drive were constructed to meet the standards of the Town Road Design Ordinance ("RDO"). Upon hearing the S.W. Cole report, the Town concluded that the Grandview Drive would require a final coat of pavement to comply with the RDO, Sprucewood Drive would require significant reconstruction to comply with RDO, and further, Comins Lane would also require a final coat of pavement to comply with the RDO. Developer Oak Ridge did not remedy the defects in the roads at the time the Town determined them to be constructed below the standards the imposed by the RDO. Because the subdivision roads were (and currently are) in violation of the RDO, the Town has not accepted Comins Lane, Grandview Drive

3

or Sprucewood Drive as "public ways." Eddington, Me., Road Design Ordinance § X (Sept. 11, 1996). As a direct consequence, and in the absence of a viable Improvement Guarantee, the plaintiffs must maintain and plow the roads in Cedar Grove with personal funds and without assistance from the Town.

The record suggests that the plaintiffs acquired their properties directly from Oak Ridge Builders between November 2001 and June 2005. The plaintiffs' attorney initiated correspondence with the Town's attorney by two letters dated January 22, 2007 and January 28, 2007. The plaintiffs requested the Town to either repair the subdivision roads in conformance with the RDO or accept the Cedar Grove roads as "public ways," despite their nonconformance. Alternatively, the plaintiffs requested the Town to provisionally accept the Cedar Grove Roads as "public ways" until the time the Town could properly budget for their repair.

As noted above, the letter of credit intended to serve as an Improvement Guarantee that the Town could use to repair the Comins Lane, Grandview Drive and Sprucewood Drive was never properly executed nor given value. In any event, the Town maintains that it has no record of the document purportedly received and accepted by both the Board of Selectmen and the Planning Board as the Improvement Guarantee.

Oak Ridge filed for Chapter 7 bankruptcy on November 30, 2007. Oak Ridge's bankruptcy case was closed on May 21, 2008. Oak Ridge's assets were completely disposed of prior to the commencement of this litigation. On December 3, 2008, Pawlendzio individually filed for Chapter 7 bankruptcy. As part of Pawlendzio's bankruptcy proceedings, the United States Bankruptcy Court for the District of Maine

4

issued a Discharge of Debtor Order on March 31, 2009—absolving Pawlednzio from liability on any outstanding debts assumed on account of the Cedar Grove subdivision.

## STANDARD OF REVIEW

Ordinarily, "[s]ummary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; M.R. Civ. P. 56(c). A contested fact is material if it could potentially affect the outcome of the litigation under the governing law. *Id.* A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.*; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

In this case, the parties have submitted a stipulated statement of material facts that leave little work for the Court to do in terms of reducing the litigation to the disputed facts that prove or disprove a "genuine issue" better suited for trial disposition. M.R. Civ. P. 56(c). Rather, the parties are only contesting points of law. The legal issue presented come down to whether the plaintiffs can sustain a declaratory judgment action on the facts of this litigation.

## DISCUSSION

The plaintiffs request that the Court order the Town to repair the Cedar Grove roads consistent with the "mandatory" provision in Subdivision Ordinance § 470.[2] The

5

plaintiffs frame Count I of the complaint entirely in form of declaratory relief: "Count I [in the complaint] is a proper request to declare the *rights and responsibilities* of parties relative to the Town of Eddington's Subdivision Ordinance . . . ." (Pl.'s Objection to Def.'s Motion for Summ. J. 2.) (emphasis added); *see also* 14 M.R.S.A. § 5953 (providing that the courts of competent jurisdiction have the power to declare "rights, status and other legal relations" between parties having adverse interests). The Court understands that the Town's systemic failures, coupled with the bankruptcy filings of both Oak Ridge and Pawlendzio, leave the plaintiffs with no recourse but to seek assistance from the Town in making the subdivision roads compliant with the Town RDO.

The Declaratory Judgment Act vests the Court with a wide degree of discretion to entertain and implement declaratory relief under appropriate circumstances. *Capadilupo v. Town of Bristol*, 1999 ME 96, ¶ 3, 730 A.2d 1257, 1258 (citation omitted). Importantly, however, "a declaratory judgment action cannot be used to create a cause of action that does not otherwise exist. . . . [and] cannot be used to revive a cause of action that is otherwise barred by the passage of time." *Sold, Inc., v. Town of Gorham*, 2005 ME 24, ¶ 10, 868 A.2d 172, 176 (citations omitted). In *Sold, Inc.*, a group of developers sought a declaratory judgment to have the trial court invalidate a part of the Town of

---

[2] The Subdivision Ordinance states:

> If the Selectmen determine . . .that the improvements have not been satisfactorily completed according to the subdivision plan, within the agreed upon time, they shall inform the subdivider in writing of the Town's intent to exercise its rights against the improvement guarantee, they shall exercise any and all such rights; and shall cause the incomplete or unsatisfactory work to be completed and to be paid from the improvement guarantee assets.

*Id.* at § 470.

Gorham's subdivision ordinance requiring the imposition of "impact fees" for subdivisions that did not reserve a percentage of land in the approved subdivision for active recreational use. *Id.* ¶ 6, 868 A.2d at 174. Ultimately, the Law Court vacated the judgment of the Superior Court, holding that while a declaratory judgment action may be used as an anticipatory challenge "to seek clarification of the applicability of laws, ordinances, and administrative regulations on impending projects," *id.* ¶ 14, 868 A.2d at 177, a declaratory judgment action could not be used to circumvent Rule 80B: "The declaratory judgment law, 14 M.R.S.A. §§ 5951-5963 (2003), does not provide a self-help device for parties who have failed to timely appeal a municipal administrative decision to gain an extension or revival of the time to appeal and reopen a decision that has otherwise become final." *Id.* ¶ 16, 868 A.2d at 177.

Consistent with the prevailing interpretation of the interplay between declaratory judgment actions and a Rule 80B appeals by the Law Court in *Sold, Inc.*, Rule 80B provides "the sole means of seeking Superior Court review of 'action' or 'failure or refusal to act' by any governmental agency, whether such review is specifically authorized by statute or 'otherwise applicable by law.'" Field, McKusick & Wroth, *Maine Civil Practice* § 80B.1 at 565 (Supp. 1981). A plaintiff challenging the action of a municipality must bring claims through a Rule 80B action unless the claim is a truly independent cause of action. *Colby v York County Comm'rs*, 442 A.2d 544, 557 (Me. 1982); *Fisher v. Dame*, 433 A.2d 366, 372 (Me. 1981). A cause of action is only "independent" if a Rule 80B action is unavailable or would not provide an adequate remedy. *Colby*, 442 A.2d at 547; *Fisher*, 433 A.2d at 372.

Section 900 of the Subdivision Ordinance expressly prescribes the method of appealing municipal action (or, in this case, inaction) by the Town in the context of enforcing an Improvement Guarantee: "An appeal may be taken, within 30 days of the Planning Board's decision on the Final Plan, by any party to the Eddington Board of Appeals in accordance with Rule 80B of the Rules [of] Civil Procedure." *Id.* There is no question the plaintiffs base Count I in the complaint entirely on the Town's "*failure or refusal* to complete the subdivision roads in accordance with the approved subdivision plan." (Compl. ¶¶ 23) (emphasis added). Phrased in this way, M.R. Civ. P. 80B operates to restrict the Court's analysis of the parties' cross-motions for summary judgment. The plaintiffs did not appeal the Town's failure or refusal to enforce Subdivision Ordinance § 470 to the Eddington Board of Appeals within the time specified by that municipal statute. Nor did the plaintiffs lodge an administrative appeal with this Court via Rule 80B. A municipal appeal and a subsequent Rule 80B action were available to the Plaintiffs and would have provided grounds to review the Town's failure to abide by its own municipal laws; therefore, Count I of plaintiffs complaint, framed solely in terms of an action for declaratory judgment, does not contain any claim "independent" of Rule 80B. *Colby*, 442 A.2d at 547; *Fisher*, 433 A.2d at 372.

The only outstanding issue is *when* the plaintiffs were on notice that the Town would not be enforcing the Improvement Guarantee to repair the Cedar Grove roads pursuant to the Subdivision Ordinance § 470. Any Rule 80B action, challenging the Planning Board's "failure to act" under § 470 of the Subdivision Ordinance, must have necessarily been brought in the time provided by statute, which in this case was "within 30 days of the Planning Board's decision on the Final Plan." Subdivision Ordinance §

8

900; *see also Sold, Inc.*, 2005 ME 24, ¶ 9, 868 A.2d at 177 (providing that under Rule 80B "challenges to municipal administrative actions must be brought within thirty days of notice of the municipal action or failure to act"). The Planning Board approved the final subdivision plan, as amended (including Phases I-III), on October 30, 2003, roughly three months after the Town discovered the inadequacies in the Cedar Grove roads. Based on the engineering report provided by S.W.Cole, the parties agree that Comins Lane, Grandview Drive, and Sprucewood Drive were to be completed to the specifications of the RDO by May 20, 2004. (SSMF ¶ 42.) Ostensibly then, the plaintiffs had 30 days from that date to appeal the Planning Board's failure to enforce Subdivision Ordinance § 470.[3] Having failed to do so, "the declaratory judgment law does not authorize a party to bring an after-the-fact challenge to the application of an ordinance . . . when the time for appeal of that administrative adjudicatory action has expired." *Sold, Inc.*, 2005 ME 24, ¶ 15, 868 A.2d at 177.

In the Court's analysis of this litigation, there is some question as to whether the "good cause" exception to the timing of an administrative appeal could be used ameliorate the injustice claimed by the plaintiffs. In *Brackett v. Town of Rangeley*, 2003 ME 109, ¶¶ 24-25, 831 A.2d 422, 429, the Law Court held that the time designated for

---

[3] Another potential "notice" complication, as applied to the plaintiffs' claims, stems from the bankruptcy filings of Oak Ridge, and subsequently, Pawlendzio, which occurred in November 2007 and December 2008, respectively. These events precipitated the current litigation and likely triggered the plaintiffs' efforts to have the Town maintain and plow the Cedar Grove roads in the absence of a viable Improvement Guarantee. Unfortunately, the stipulated statement of material facts does not provide the Court with the precise date upon which the plaintiffs had "notice" that Town had failed to secure an Improvement Guarantee to repair the Cedar Grove roads consistent with the Subdivision Ordinance. However, even if the Court liberally construes the plaintiffs' January 28, 2007 correspondence with the Town Attorney as the effective "notice date"—reflecting the approximate date the plaintiff's became affirmatively aware that the Town would not act to enforce the Improvement Guarantee provision, or in its absence, assume fiscal responsibility for repairing the Cedar Grove roads—the plaintiffs failed to lodge an administrative appeal with the Board of Appeals within thirty days of the Town attorney's reply, and failed to file an 80B appeal with this Court.

filing an administrative appeal could be extended "in those special situations in which a Court of competent jurisdiction finds special circumstances which would result in a flagrant miscarriage of justice unless, within a narrowly extended range, a time longer than the general norm is held reasonable." *Id.* (internal quotation marks omitted) (citation omitted). However, the "good cause" exception appears to have only been applied to a narrow category of cases such as where a municipal ordinance either does not specify a time for filing an administrative appeal or where a municipal ordinance does not require a town to give notice of the issuance of building permits that may adversely affect an abutting landowner's property interest. *Brackett*, 2003 ME 109, ¶ 25, 831 A.2d at 429; *Viles v. Town of Embden*, 2006 ME 107, ¶¶ 12-18, 905 A.2d 298, 300-03; *Thibeault v Town of Newfield*, 2006 Me. Super. LEXIS 128, *4-5 (June 12, 2006).

There is no express authority for extending the administrative appeal period beyond the 30-day notice provided in Subdivision Ordinance § 900. However, the equities of the situation—the Town's failure to secure an Improvement Guarantee, along with the bankruptcy filings of Oak Ridge and Pawlendzio— suggest that it is proper to consider application of this exception. Among the factors the Law Court has established in applying the good cause exception include a factual analysis of whether (1) the municipal authority violates the terms of its ordinance; (2) the permit holder violates the terms of his permit; and (3) the abutter acts in a reasonably prompt manner to take action. *Brackett*, 2003 ME ¶ 25, 831 A.2d at 430. Of the three factors, the third factor militates against applying the "good cause" exception in this case. In short, the plaintiffs waited over four years after May 20, 2004, to file any civil complaint, and did not pursue any of the administrative remedies available in the Subdivision Ordinance or by Rule 80B

10

appeal. While the first factor seems to be established on this record by stipulation -- the failure of the Town to follow its ordinance -- factor three has not been established on this record as it cannot be said that plaintiffs acted in a "reasonably prompt manner to take action."

In Count II of the complaint, the plaintiffs request, as an alternative remedy to Count I, that the Court order the Town: (1) to compensate them for any property devaluation they suffer as a result of not having the subdivision roads declared as public ways; and (2) to provide the funds necessary to establish a trust to pay for the plowing and maintenance of the Cedar Grove roads.[4] The plaintiffs argue that the claims in Count II reflect an alterative means of relief to resolve "the Town's responsibilities going forward." (Pl.'s Obj. to Def.'s Mot. for Summ. J. at 3.) Similar to the above analysis with respect to Count I, the Court concludes that the Plaintiffs cannot maintain an after-the-fact action for declaratory judgment where a municipal administrative appeal and Rule 80B action provided the proper avenue to determine whether the Town should have enforced the Improvement Guarantee against Pawlendzio/Oak Ridge or should now incur the fiscal liability of repairing the Cedar Grove roads. *Sold, Inc.*, 2005 ME 24, ¶ 15, 868 A.2d at 177.

---

[4] The parties contest whether the plaintiff can ground an action for declaratory relief, at least in part, on a theory of equitable estoppel. (*See* Pl.'s Compl. ¶¶ 22, 26.) As noted by the Town, "equitable estoppel can be asserted against a municipality only as a defense and cannot be used as a weapon of assault." *Tarason v. Town of South Berwick*, 2005 ME 30, ¶ 16, 868 A.2d 230, 234 (citation omitted) (internal quotation marks omitted). The plaintiff frames the issue quite differently by arguing that they are "not attempting to estop the . . . Town from taking actions it has a legal right to take," but rather "attempting to force the Town to comply with the provisions of its own subdivision ordinance." (Pl.'s Obj. to Def.'s Mot. for Summ. J. at 4.) To the extent the plaintiffs claim that equitable estoppel is not implicated on the facts of the litigation, or used as a sword in the complaint, then the plaintiff's "reliance" on the laws and ordinances of Town of Eddington when purchasing their properties in Cedar Grove suffers from the same fatal defect discussed at length above; chiefly, the applicability of the *Sold, Inc.* rule, which renders a declaratory judgment action ineffective for the purposes of challenging municipal action or inaction after the time for an municipal or 80B appeal has passed.

11

To the extent Count II of the complaint is more accurately characterized as a tort claim, seeking damages for the Town's past failure to properly secure an Improvement Guarantee or take action in absence of a such a guarantee, the plaintiffs did not observe the notice requirements of the Maine Tort Claims Act ("MTCA"). Specifically, the plaintiffs failed: (1) to file notice of a claim within 180 days of the Town's failure or refusal to act on the Improvement Guarantee (or lack thereof); and (2) to file notice of claim with the proper Town agent. 14 M.R.S.A. § 8107(1), (3). Furthermore, if the plaintiffs had knowledge that the Town would not be performing its obligations under the Subdivision Ordinance § 470 as of May, 20, 2004—the date on which the Cedar Grove roads were to be completed to the specifications of the RDO—any tort claim would be barred by the MTCA's two-year statute of limitations. 14 M.R.S.A. § 8110. Consequently, it is unnecessary for the Court to venture beyond an analysis of the MTCA's notice and statute of limitations provisions into an "immunity" analysis because the plaintiffs have failed to comply with the prerequisites for maintaining a cause of action under the MTCA.

Given the dictates of *Sold, Inc.* as well as the very limited "good cause exceptions" recognized to date by the Law Court, the Superior Court is left with no legal basis to provide the declaratory relief plaintiffs seek. The plaintiffs' claims, by their own terms, arise out of Town's "failure or refusal" to comply with the terms of the Subdivision Ordinance and should have been pursued through M.R. Civ. P. 80B. (Pl.'s Compl. ¶¶ 23, 27.) The Town is therefore entitled to summary judgment as a matter of law.

The entry is:

1. Plaintiffs', Cedar Grove Homeowner's Association and Robert Dorr, motion for summary judgment is **DENIED**.

2. Defendant, Town of Eddington, motion for summary judgment is **GRANTED**.

3. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: December 21, 2009

M. Michaela Murphy
Superior Court Justice

13

MAINE JUDICIAL INFORMATION SYSTEM
PENOBSCOT COUNTY SUPERIOR COURT
PAGE P - PARTY VIEW

CEDAR GROVE HOMEOWNERS' ASSOCIATION ET AL VS FRANK PAWLENDZIO ET AL

CASE #:BANSC-CV-2008-00144

UTN:

| SEQ | TITLE | NAME | DOB | ATTY |
|-----|-------|------|-----|------|
| 001 | PL | CEDAR GROVE HOMEOWNERS ASSOCIATION *Ed Bearny + John Hamer Esq* | | T |
| 004 | PL | ROBERT DORR *Same* | / / | T |
| 002 | DEF | FRANK PAWLENDZIO *Sut Davis Esq* | / / | T |
| 003 | DEF | EDDINGTON TOWN OF *Charles Gilbert Esq* | | T |