STATE OF MAINE                                    SUPERIOR COURT
CUMERLAND, ss.                                    CIVIL ACTION
                                                  DOCKET NO. AP-22-41


JAMES GALLAGHER, ANNE GALLAGHER
NORMA DREW, and JEFFREY DREW,

         Plaintiffs,

    v.                                            **ORDER**

TOWN OF CHEBEAGUE ISLAND, MICHAEL
MAKEE, and MARY MAKEE,

         Defendants,

REC'D CUMB CLERKS OF
JUL 5 '23 PM2:10

Before the Court are five pending motions:

    (1) Plaintiffs' Motion to Enlarge the Deadline for Filing an Appeal to the Town;

    (2) Plaintiffs' Motion to Stay;

    (3) Plaintiffs' Amended Motion to Withdraw Stay, Grant Enlargement, and for Remand;

    (4) Plaintiffs' Motion to Strike Portions of Makee Defendants' Opposition to Amended Motion; and

    (5) Defendants Makees' Motion for Judgment as a Matter of Law, Judgment on the Pleadings, and/or Dismissal for Want of Prosecution.

For the following reasons, the Court denies the Motion to Strike, denies the Motion to Enlarge, grants in part the Motion for Judgment, and finds the remaining motions moot. It dismisses the appeal.

**Background**

This appeal challenges a permit that the municipal Code Enforcement Officer ("CEO") issued for construction activities on a 2.33-acre residential property ("the property") located at 107 Cottage Road in the Town of Chebeague Island, Maine ("Town"). Michael and Mary Makee (the "Makees") own the property and have undertaken improvements there, including construction of an accessory guest house. The CEO issued a permit under the Zoning Ordinance that concerned

1

Plaintiffs-Keith Richard, Esq.
Defendant Town, Natalie Burns, Esq.
Defendants Makee-Scott Dolan, Esq.

the construction of the guest house. Petitioners James and Anne Gallagher (the "Gallaghers") and Norma and Jeffrey Drew (the "Drews") own property abutting the property.

After the issuance of the Zoning Ordinance permit in late May 2022, the Gallaghers noticed construction on the Property in June 2022. Mr. Makee informed Mr. Gallagher about their permits for the construction and the scope of construction on June 1, 2022. Before the end of June, James Gallagher had gone to the Town Hall three times to obtain more information. Each time, Town employees told him that the Property's file was unavailable or incomplete. James Gallagher then attempted to reach the CEO, whose job is part-time and who is often off-island, by telephone. He left multiple voicemails for the CEO in June 2022. The CEO did not contact Gallagher in response. In early July 2022, Gallagher returned to the Town Hall but was again unable to review any permits or applications regarding the property. Gallagher sought legal advice from an attorney in mid to late July 2022. He retained Attorney Guay, who reached out to the CEO and directly requested the file. Anne Gallagher also reached out to the CEO and requested the file around this time.

On August 15, 2022, the Gallaghers received some files regarding the Property, but these files did not include the building permit they had been seeking. They did receive an application to construct a guesthouse that had been submitted between May 25 and 26, 2022. On August 16, Norma Drew and Attorney Guay both requested further documents. They received the relevant permit in September 2022, at which point Attorney Guay assessed the merits of a potential appeal. They filed their appeal on September 30, 2022. By the time the appeal was filed, the Makees had already expended a "substantial amount of money" toward the guest house construction, which had an estimated cost of $650,000.

The Shoreland Zoning Ordinance explicitly allows for a good cause exception to the appeal window but the Zoning Ordinance does not. Because the Drews and Gallaghers appealed after the

2

deadline of 30 days from issuance of the permits, they appealed the Zoning Ordinance permit to both the Town Board of Adjustments and Appeals ("Board") and the Superior Court at once, on the theory that if the Town Board does not have jurisdiction to hear a late appeal under the Zoning Ordinance, the Superior Court could grant a good cause extension in equity. The Board has since decided it could not hear the late appeal.

The Drews and Gallaghers (collectively, the "Abutters") filed their complaint in the Superior Court pursuant to M.R. Civ. P. 80B challenging the approval of the permit for construction of a guest house issued under the Zoning Ordinance. The Gallagher and Drew count I for Rule 80B review challenges the CEO's decision to issue a Zoning Ordinance permit for the construction of the guest house on the grounds that the decision is unlawful under state and local law and ordinance; a Shoreland Zoning permit should have been required for the construction; the wastewater system and the lot are too small to accommodate the extra dwelling; and the permit is arbitrary and capricious, based on errors of law, and unsupported by substantial evidence.

**Discussion**

First, the Court notes the Abutters withdrew their Motion to Stay when they filed their Amended Motion to Withdraw Stay, Grant Enlargement, and Remand. Therefore, the Court will not rule on the Motion to Stay. To the extent the amended motion requested a withdrawal of the stay request, the motion is granted. The amended Motion to Withdraw is otherwise denied. In the amended motion, the Abutters submitted additional argument regarding the Motion to Enlarge. In their opposition to the amended motion, the Makees responded to the additional argument and submitted an affidavit opposing enlargement. The Abutters then moved to strike the opposition because of its addressing the Motion to Enlarge, on which briefing had closed. By submitting further argument on enlargement, the Abutters opened the door for the Makees to respond. The

3

Court denies the Abutters' Motion to Strike.

In the Motion to Enlarge, the Abutters ask the Court to grant an equitable extension to the time allotted for appeal of the Zoning Ordinance permit to the Town Board. The Makees argue the exception should not apply because it is not explicitly available in the Zoning Ordinance, whereas it is explicitly available in the Shoreland Zoning Ordinance, and because circumstances warranting a good cause exception to the filing deadline are not present. They also argue the exception would interfere with their vested rights in the construction. For the following reasons, the Court denies the Motion to Enlarge.

A court may grant a good cause exception to a reasonable municipal appeal deadline "in those special situations in which a Court of competent jurisdiction finds special circumstances which would result in a flagrant miscarriage of justice unless, within a narrowly extended range," the deadline is extended. *Keating v. Zoning Bd. of Appeals*, 325 A.2d 521, 524 (Me. 1974). "[T]he application of the exception is a judicial, and not an administrative, decision." *Viles v. Town of Embden*, 2006 ME 107, ¶ 8, 905 A.2d 298 (citing *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 14, 831 A.2d 422).

In making determinations, the Law Court has assessed the competing interests of the builder "in light of all the circumstances bearing on all the equities of the situation." *See Gagne v. Cianbro Corp.*, 431 A.2d 1313, 1317 & n.3 (Me. 1981) (citing *Gagne v. Lewiston Crushed Stone Co.*, 367 A.2d 613, 619 (Me. 1976)). Factors include whether the appellant received notice of the issuance of the permit, which is a key but not a determinative factor; the amount of time that passed between when the appellant obtained actual knowledge of the permit and when the appellant filed the appeal; and whether the municipality violated its own ordinance or the permittee violated the permit. *Viles v. Town of Embden*, 2006 ME 107, ¶ 13, 905 A.2d 298 (citing *Lewiston Crushed*

4

*Stone*, 367 A.2d at 619; *Cianbro*, 431 A.2d at 1317; *Brackett*, 2003 ME 109, ¶¶ 18, 21, 831 A.2d 422). The Law Court has also considered whether the landowners would have had "reason to anticipate" resistance from abutters. *Cianbro*, 431 A.2d at 1317.

The Court has emphasized the need for quick action after notice of construction. In *Brackett*, the Court vacated the judgment of the Superior Court declining to apply the exception because

> (1) the Town violated its own ordinances when it issued the building permit in that, among other violations, it failed to give required notice to the neighbor; (2) the permit holder violated the terms of the permit when he built the cottage closer to the shore than allowed in the permit, and the cottage contained more square feet than the permit authorized; and (3) the neighbor acted promptly when learning of the building violations.

*Viles*, 2006 ME 107, ¶ 13, 905 A.2d 298 (citing *Brackett*, 2003 ME 109, ¶¶ 18-21, 831 A.2d 422). The prompt action by the abutter consisted of asking the CEO to revoke the permit "as soon as" the abutter saw construction on July 3, writing a letter to the Board of Selectmen July 8 asking them to revoke the permit, visiting the Town Office on July 27 where the abutter was first told about the need to appeal, and filing an appeal on July 30. *Brackett*, 2003 ME 109, ¶¶ 6-8, 18, 831 A.2d 422. The *Brackett* decision emphasized,

> We are not unmindful of the fact that in the ordinary case, it is important for people who are about to invest substantial sums to know that they will not be sued after they expend their money. The time for litigating in ordinary cases remains prior to the start of construction. When the town violates its ordinance and the permit holder violates its permit and the abutter acts reasonably promptly, courts will recognize a "good cause exception" to a town's fixed appeal period.

*Id.* at ¶ 25.

Similarly, in *Gagne v. Cianbro*, the Law Court affirmed the Superior Court's application of the exception because

> (1) the neighbors received no notice of the building permit until eight months after it was issued, when they saw construction activity; (2) the history of litigation

between the parties was such that the permit holder had reason to anticipate the neighbors' opposition to the permit; and (3) as soon as the neighbors learned about the permit, they instituted legal action.

*Viles*, 2006 ME 107, ¶ 16, 905 A.2d 298 (citing *Cianbro*, 431 A.2d at 1318).

In *Viles*, the Law Court affirmed the Superior Court's decision that the exception applied when the abutter did not receive notice of the permit and took timely action after noticing construction. He first saw construction stakes seven months after the permit was issued and acted promptly to bring the matter to the attention of the appropriate officials, who found his complaints meritorious enough that a stop work order was issued. *Id.* ¶ 18. When the stop work order was lifted, the abutter filed his appeal within ten days. *Id.* ¶ 14. The Court did not consider whether the municipality violated its own ordinance because that issue had not been before the lower court. *Id.* ¶ 18, n.1.

The Law Court has cited periods of unjustified delay when it has declined to apply the exception. In *Wilgram v. Town of Sedgwick*, the Law Court vacated a Superior Court ruling finding good cause when the abutter waited seventy-six days after she knew that construction was underway before filing an appeal to the Board of Appeals. *Id.* ¶ 17 (citing *Wilgram v. Town of Sedgwick*, 592 A.2d 487, 489 (Me. 1991)); *Wilgram*, 592 A.2d at 488 ("None of the special circumstances that might justify granting her an exception to the filing rule is to be found here."). In a decision issued May 23, 2023, the Law Court declined to conclude good cause was present when an abutter filed an appeal August 8 after learning of a permit on May 19, which was four to five months after the appeal period ended, and explaining the delay was due in part to the CEO's failure to respond to a letter and in part to a pending appeal in the Superior Court that was dismissed for failure to exhaust administrative remedies. *Tominsky v. Town of Ogunquit*, 2023 ME 30, ¶¶ 4, 27, __ A.3d __. The Court stated that the 81-day delay during the Superior Court appeal foreclosed

6

the exception's applying despite counsel's misunderstanding about the appeal process. *Tominsky*, 2023 ME 30, ¶ 28, __ A.3d __. The Court reasoned that the CEO's response was not a requirement and that a mistake of law was not an "extraordinary circumstance" that might warrant application of the exception. *Id.* (citing *Alley v. Alley*, 2004 ME 8, ¶¶ 1-2, 840 A.2d 107; *Young v. Sturdy Furniture Co.*, 441 A.2d 320, 321-22 (Me. 1982)).

There is no bright line for how long of a delay is permissible, and the additional circumstances impact whether a delay is justified. The Court has applied the exception where an unexplained 10-day delay occurred and declined to apply the exception where an unjustified 76-day delay occurred. *Compare Viles*, 2006 ME 107, ¶ 13, 905 A.2d 298, *with Wilgram*, 592 A.2d at 488. In *29 McKown LLC v. Town of Boothbay Harbor*, the Court stated that it would apply the exception in a case in which an abutter delayed for 27 days without explanation, the town violated its own ordinance by failing to notify an abutter of a permit, and a permittee violated its permit during construction. 2022 ME 38, ¶¶ 2, 7 n.4, 277 A.3d 364.

In this case, this Court first determines that the Abutters could be eligible for the exception because they did not receive notice when the permits issued. *See Tominsky*, 2023 ME 30, ¶ 26, __ A.3d __ (stating lack of notice "could trigger application of the exception"). The Abutters' actions up until their receipt of the permits support application of the exception, but their delay in September after receiving the permit cuts against the exception. The Abutters do not give the exact length of the delay but only state that they received the permit "in September" and appealed on September 30. They attribute the delay to counsel's reviewing the permits to determine whether to file an appeal. This delay is potentially as long as the appeal period itself and explained by circumstances that are unextraordinary. *Tominsky* demonstrates that mistakes caused by attorneys that are not explained by excusable neglect are not extraordinary circumstances. *Id.* ¶ 28. Upon

7

receiving the permits, the Abutters were well aware of the construction progress made during their attempts to obtain the permits yet then delayed for up to an additional month.

The Abutters have not shown that the Town violated ordinance or that the permittees violated their permit. However, the Court finds the Town CEO was culpable in failing to provide the permits. This misstep is not as clear a violation of ordinance as in analogous cases. *See, e.g., Brackett,* 2003 ME 109, ¶¶ 18-21, 831 A.2d 422 (town's failure to give notice to abutters); *29 McKown LLC v. Town of Boothbay Harbor,* 2022 ME 38, ¶¶ 2, 7 n.4, 277 A.3d 364 (town failed to notify an abutter of a permit and permittee violated its permit during construction). Here, the CEO's failure supports application of the exception and excuses the Abutters' delay while they obtained the permits, but it cannot offset a month-long delay while counsel reviewed the documents, especially when the building had been under construction for three months and was completed but for windows and siding. The Court declines to apply a good cause exception under these circumstances and denies the Motion to Enlarge.

In their Motion for Judgment as a Matter of Law, Judgment on the Pleadings, and/or Dismissal for Want of Prosecution, the Makees move to defeat the Abutters' appeal on three grounds. First, they request judgment as a matter of law under M.R. Civ. P. 50(d) based on the complaint's failure to justify the late filing. The Court declines to grant relief on these grounds. The complaint explains that the Abutters are requesting the Court enlarge their time to appeal to the Town Board before the Court reaches the merits of the appeal. *See Lamarre,* 2021 ME 45, ¶ 13 n.5, 259 A.3d 764 (citing *Viles,* 2006 ME 107, ¶ 9, 905 A.2d 298) ("Because the Ordinance itself does not contain a good-cause provision extending the filing deadline with the Board, the decision whether good cause existed to extend that deadline was one for the Superior Court, not the Board, to make...."). They filed their Motion to Enlarge contemporaneously with the

8

complaint. The parties do not dispute that the Board declined to hear the late appeal of the permit before it. Moreover, the Court may extend the timeline to file the record on a showing of good cause. M.R. Civ. P. 80B(g). Good cause justifying an extension of the deadline for filing the record would be present here because the Court would not review the present record at this stage whether or not the Motion to Enlarge were granted.

The Makees next argue that because the Abutters have not made a motion for trial of the facts or filed a record, they cannot prove their case; that the Court should grant a judgment on the pleadings under M.R. Civ. P. 12(c) because Plaintiffs acknowledge that their complaint is late but it does not include facts justifying the untimeliness; and that the case should be dismissed under M.R. Civ. P. 80B because the Abutters have missed the deadline for filing the record. The Court likewise declines to grant relief on these grounds.

The Court does grant the Motion for Judgment on the Pleadings under Rule 12(c) to the extent it argues that the Abutters' claims must be dismissed because the appeal was late and no valid justification exists. If the Court were inclined to grant the Motion to Enlarge, Defendants' motion would fail. However, with enlargement denied, the Abutters have acknowledged their case fails. Pls.' Opp. to Defs.' Mot. J. at 4 ("if the motion to enlarge is denied, the case is over"). No genuine disputes of material fact exist and judgment as a matter of law is warranted under Rule 12(c). ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."). The parties have had a reasonable opportunity to present all material made pertinent to the Motion for Judgment on the Pleadings, notably by way of the

9

Motion to Enlarge.[1] Therefore, the Court grants the motion insofar as it requests judgment on the pleadings under Rule 12(c).

In their reply to their Motion for Judgment, the Makees request costs. The Abutters' shall have thirty (30) days from the issuance of this order to oppose the request for costs. If no opposition is received, costs will be awarded to the Makees.

The entry is:

> Petitioners' Motion to Stay is WITHDRAWN.
> Petitioners' amended Motion to Withdraw Stay, Grant Enlargement, and Remand is GRANTED IN PART and DENIED IN PART, consistent with the above decision.
> Petitioners' Motion to Strike is DENIED.
> Petitioners' Motion to Enlarge is DENIED.
> Defendants' Motion for Judgment as a Matter of Law, Judgment on the Pleadings, and/or Dismissal for Want of Prosecution is GRANTED IN PART and DENIED IN PART, consistent with the above decision.
> The Petitioners' Rule 80B Petition for Review is DISMISSED with prejudice.
> Petitioners shall submit opposition to Defendants' request for costs within thirty (30) days or costs will be awarded to Defendants.

The clerk shall enter this order on the docket by reference. M.R. Civ. P. 79(a).

Date: July 5, 2023

Deborah P. Cashman
Justice, Maine Superior Court

Entered on the Docket: 07/07/23

---

[1] The Court denies the Abutters' request to file a surreply to the amended Motion to Withdraw Stay, finding they have had a sufficient opportunity to argue on the issue. The Court notes that it would have denied the Motion to Enlarge even if it had granted the Motion to Strike.

10